UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ERNESTO ORITO,

    Plaintiff,

v.

DELTA AIR LINES, INC., *et al.*,

    Defendants.

CASE NO. C17-1372 RSM

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.     INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment. Dkt. #16. Plaintiff was formerly employed by Defendant. Plaintiff alleges that he was terminated because of his national origin and race and that Defendant breached an implied contract in terminating his employment.[1] Dkt. #1-1. Defendant maintains that Plaintiff was terminated for violating one of Defendant's policies and that there was no discrimination. Dkt. #16. Neither party has requested oral argument and the Court does not find oral argument necessary to resolve

---

[1] Plaintiff's Complaint also asserts that he was "wrongfully terminated from his employment with Defendants in violation of state and common law when he attempted to exercise his rights by reporting the illegal and discriminatory behavior to the Defendants." Dkt. #1-1 at ¶ 12. Defendant indicates that Plaintiff has admitted there was no retaliation. Dkt. #16 at 14; Dkt. #19 at 27 (Plaintiff admits that "[Defendant] did not retaliate against [Plaintiff] for engaging in protected activity when it terminated [Plaintiff's] employment"). Plaintiff does not contest the point and has clearly abandoned the claim.

ORDER – 1

Defendant's Motion. Having reviewed the briefing and the record and for the following reasons, the Court grants Defendant's Motion.

## II. BACKGROUND

Plaintiff was previously employed by Defendant for more than seventeen years. Dkt. #18 at Ex. C. As a benefit to its employees, Defendant allows them free and reduced-rate travel (a "Travel Pass") and allows them to share the benefits with family and close friends. Dkt. #18 at ¶ 2. Written policies govern the use of Travel Passes and Defendant keeps its employees apprised of these policies. *Id.* at ¶ 3. After learning that some employees were misusing their Travel Passes, Defendant issued a 2014 memo to all employees about the rules of the Travel Pass. *Id.* at ¶¶ 4–5. The memo also informed employees that Defendant was implementing a program to assure that Travel Passes were used properly. *Id.* at ¶ 6.

Shortly thereafter, and through its new program, Defendant determined that "an unusual number of [Defendant's] employees in the SeaTac airport had given" Travel Passes to a non-employee individual. *Id.* at ¶ 9. Defendant tracked the transfers to one employee—Mr. Andres—and determined that seven other employees—including Plaintiff—had permitted the non-employee, through Mr. Andres, to use their Travel Passes. *Id.* at ¶¶ 9–10. Defendant investigated each employee further.

Defendant's investigation of Plaintiff's use of the Travel Pass revealed that he had allowed his family to use it consistent with Defendant's policy. Dkt. #18 at Ex. B. However, Plaintiff had also allowed twelve individuals outside of his family to use his Travel Pass between 2012 and 2014. *Id.* Of these twelve, Plaintiff was only able to identify two, and, even then, did so incorrectly. *Id.* Further, Plaintiff indicated that he annually gave Mr. Andres access to his Travel Pass to assist Mr. Andres with family emergencies. *Id.* When Plaintiff was prompted to

ORDER – 2

demonstrate the process of making a reservation under his Travel Pass, he was unable to do so. *Id.* Lastly, Defendant did not believe that Plaintiff was forthcoming during its investigation. *Id.*

Following its investigation, Defendant terminated the seven employees that it found had improperly used Travel Passes. Dkt. #18 at ¶ 11. The seven employees terminated included two Caucasian employees. *Id.* at ¶ 11. Plaintiff, who is apparently non-Caucasian, was also among the seven employees terminated. Dkt. #18 at Ex. C. As stated by Defendant, at the time of termination, Plaintiff was let go because "[s]ince 2012, a total of twelve pass riders traveled on his account and he could not accurately provide names, itineraries or dates of travel for any of them" and because "[t]hroughout the investigation, [Plaintiff] was untruthful." *Id.*

Conversely, Plaintiff believes his termination was racially motivated "because other white ramp employees gave [Mr. Andres Travel Passes], but those employees were not fired." Dkt. #19 at 6–7. Specifically, Plaintiff identifies two employees that he believed had been treated differently. One was, in fact, fired because of the investigation. Dkt. #18 at ¶ 11. Regarding the second, Mr. Fall, a former employee, testifies that Mr. Tschumi allowed Mr. Fall to use his Travel Pass and did not know the ultimate passenger. Dkt. #20-1. Mr. Tschumi, however, was not investigated and was not terminated. *Id.* Defendant does not have any record that Mr. Tschumi has ever "engaged in or been investigated for any [Travel Pass] misconduct. Dkt. #18 at ¶ 13; Dkt. #23 at ¶¶ 7–10.

### III. DISCUSSION

**A. Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are

ORDER – 3

those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). However, the non-moving party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 251. Uncorroborated allegations and self-serving testimony will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987). Rather, the non-moving party must make a "sufficient showing on [each] essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Plaintiff's Discrimination Claim Fails**

Because there will rarely be direct evidence of discrimination, discrimination claims are often considered under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green.* 411 U.S. 792 (1973). *See Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cnty.*, 189 Wash.2d 516, 404 P.3d 464, 470–71 (2017) (applying *McDonnell Douglas* framework to claims

ORDER – 4

under the WLAD); *Kastanis v. Educ. Employees Credit Union*, 122 Wash.2d 483, 859 P.2d 26, 30 (1993) (applying *McDonnell Douglas* framework in context of wrongful termination). Under *McDonnell Douglas*, a plaintiff bears the initial burden of establishing a prima facie case by raising an inference of discrimination—a "presumption that the employer unlawfully discriminated against the employee." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–54 (1981). After this prima facie case is made, the burden "then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (quoting *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985), *as amended*, 784 F.2d 1407 (1986)). If the defendant succeeds, then to defeat summary judgment, the plaintiff must demonstrate that the "articulated reason is a pretext for unlawful discrimination by 'either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Aragon v. Republic Silver State Disposal, Ind.*, 292 F.3d 654, 658–9 (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quotation marks and string citation omitted).

**1. Plaintiff Fails to Make Even a Prima Facie Case of Discrimination**

Where a plaintiff lacks direct evidence that his termination was discriminatory, he may raise an inference of discrimination, a prima facie case, by showing that he (1) belongs to a protected class,[2] (2) performed his job in a satisfactory manner, (3) was fired, and (4) that other similarly situated employees outside of his protected class were not fired. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Plaintiff fails to meet even this low hurdle.

---

[2] Plaintiff does not actually allege that he is a member of a protected class in his Complaint, but the parties appear to agree that Plaintiff is Filipino-American.

ORDER – 5

Most importantly, Plaintiff cannot show that similarly situated employees outside of his protected class were not fired. Rather, Defendant establishes that all seven employees similarly situated to Plaintiff—those violating the same policies—were fired. Dkt. #18 at ¶ 11. Plaintiff argues that a single employee—Mr. Tschumi—was treated more favorably because he also once gave his Travel Pass to a fellow employee and did not know the ultimate passenger, yet he was not investigated and fired. Dkt. #20 at 4–5; Dkt. #20-1. But even viewing this evidence in the light most favorable to Plaintiff, as the Court must, the evidence does not establish that Plaintiff and Mr. Tschumi were similarly situated[3] or that Defendant had any notice of Mr. Tschumi's actions. Mr. Fall's vague declaration does not create a genuine dispute as to a material fact.

Plaintiff also fails to establish that he was performing his job in a satisfactory manner. Plaintiff admits that he allowed his Travel Pass to be used by individuals that he did not know— a violation of Defendant's policies—and that he was aware of Defendant's policies. Dkt. #19 at 25–27. Plaintiff maintains, however, that he was not violating the Travel Pass policy by allowing others to use it so long as it was not used for business travel and was not sold. Dkt. #20 at 2. But Plaintiff reads the policy too narrowly, ignoring that Travel Pass "abuses or misconduct by any associated pass rider to the sponsoring employee can result in either a temporary or permanent revocation of pass travel privileges or in some cases, termination of employment." Dkt. #18 at Ex. A. That Plaintiff was not the only individual fired for violating the Travel Pass policy is strong evidence that Defendant viewed the conduct as an abuse of its Travel Pass benefit and that Defendant was no longer satisfied with the performance of its seven employees. Further still,

---

[3] In fact, Defendant points out that the incident involving Mr. Tschumi occurred in 2008, well before Defendant updated its policies, implemented an enforcement program, and terminated Plaintiff and six other employees in 2014. Dkt. #21 at 3–5; Dkt. #20-1 at 4.

ORDER – 6

Plaintiff presents no evidence contesting the fact that he was terminated, at least in part, because Defendant found he was untruthful during Defendant's investigation. Dkt. #18 at Ex. C.

Further still, even if Plaintiff was able to raise an inference of discrimination, he presents no evidence establishing that Defendant's legitimate nondiscriminatory reason for its employment decision was merely pretextual. Plaintiff cannot point to any direct evidence of discrimination and cannot show that Defendant's stated reasons are unworthy of credence. Defendant fired Plaintiff and six other employees all for committing the same job-related misconduct.

### C. Plaintiff's Implied Contract Claim Fails

Plaintiff's Complaint alleges that he "had an actual or implied employment contract with the Defendants, and that the Defendants, [sic] unlawfully breached their employment contract with [Plaintiff], and wrongfully terminated him." Dkt. #1-1 at ¶ 13. The general rule in Washington is that:

> employment contracts indefinite as to duration may be terminated by either the employer or the employee at any time, with or without cause. *Thompson v. St. Regis Paper Co.* 102 Wash.2d 219, 223, 685 P.2d 1081 (1984). A terminable at will relationship can, however, be contractually modified by an employee policy manual. *Thompson,* 102 Wash.2d at 229–30, 685 P.2d 1081; *Swanson v. Liquid Air Corp.,* 118 Wash.2d 512, 520, 826 P.2d 664 (1992). A promise contained in an employee manual of specific treatment in specific situations may be enforceable if an employee relies thereon. *Thompson,* 102 Wash.2d at 223, 685 P.2d 1081; *Swanson,* 118 Wash.2d at 520, 826 P.2d 664; *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880 (1980).

*Burnside v. Simpson Paper Co.*, 123 Wash. 2d 93, 104, 864 P.2d 937, 943 (1994).

Plaintiff's attempt to argue that the Travel Pass policy modified his at will employment contract such that he would not be fired if he did not violate the express terms of the Travel Pass policy is wholly without merit. *See* Dkt. #20 at 6–7; Dkt. #21 at 8–9. Further still, Plaintiff does not allege that he relied upon the terms of the Travel Pass policy. The claim fails.

ORDER – 7

## IV. CONCLUSION

Having reviewed Defendant's Motion, the briefing and the relevant record, the Court finds and ORDERS that Defendant's Motion for Summary Judgment (Dkt. #16) is GRANTED. All of Plaintiff's claims are DISMISSED with prejudice. This matter is CLOSED.

DATED this 21st day of February 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 8